UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE SPILLER,

                    Plaintiff,                                Case No. 04-72815

vs.                                          HONORABLE ROBERT H. CLELAND
                                              HONORABLE STEVEN D. PEPE

CORRECTIONAL MEDICAL SERVICES,
DR. JOEL SHAVELL, and NURSE PATRICIA
GARNER-WILLIAMS,

                    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Eddie Spiller is a prisoner in the custody of the Michigan Department of

Corrections ("MDOC").  Plaintiff filed a *pro se* civil rights complaint against Correctional

Medical Services ("CMS") , Dr. Joel Shavell, and Nurse Y. Garner pursuant to 42 U.S.C. §

1983, alleging violations of his Eighth and Fourteenth Amendment rights.  On August 30,

2004, Defendants CMS and Joel Shavell filed a motion to dismiss.  On October 5, 2004,

Plaintiff's complaint was amended to correctly name Nurse Patricia Garner-Williams as a

Defendant.  On February 2, 2005, Defendant CMS' motion to dismiss was granted and

Defendant Joel Shavell's motion to dismiss was denied.  On December 15, 2004, Defendant

Garner-Williams filed this motion for summary judgment.  All pretrial proceedings were

referred to the undersigned pursuant to 28 U.S.C. §§ 636(b)(1)(A),(B).

I.      BACKGROUND

Plaintiff is incarcerated at the Ryan Correctional Facility in Detroit, Michigan.

The Plaintiff alleges that, on October 22, 2002, he began experiencing sharp stomach pains, nausea, dizziness, fatigue, and vomiting spells (Am. Compl. ¶ 14). Later that evening, Nurse Garner-Williams called him to health services to give him a pill for nausea and vomiting, which he claims did not help. The next day, Dr. Joel Shavell checked his temperature and pulse and examined his stomach before telling him his problem was psychological or bulimia (Am. Compl ¶ 15). Dr. Shavell told Plaintiff that he could not do testing "due to CMS".

On November 13, 2002, Plaintiff began vomiting blood and having stomach pains, nausea, fatigue and dizziness (Am. Compl. ¶ 16). Plaintiff collapsed in the bathroom and was taken back to his cell. That day, he was admitted to Detroit Receiving Hospital where tests showed he had a bleeding ulcer, swollen pancreas, and massive blood loss. He was discharged on November 23, 2002, and given a follow-up appointment for December 2, 2002 (Am. Compl. ¶ 17). CMS denied Plaintiff his follow-up visit and did not provide the follow-up care that the hospital offered.

On December 8, 2002, Plaintiff kited Health Services about not being seen (Am. Compl. ¶ 20). On December 12, Plaintiff saw Dr. Shavell, and his prescribed medications were substituted (Am. Compl. ¶ 21). Plaintiff kited Health Services again on December 19 and 21 to report pain (Am. Compl. ¶¶ 22-24).

Plaintiff was hospitalized from December 24 to December 29 "as a result of: 1) Substituted medications; 2) Denial of Special Diet; and 3) Delay/Denial in follow-up treatment/care by . . . CMS." (Am. Compl. ¶ 25). On December 30, 2002, and January 5, 2003, Plaintiff kited Health Services about his medications (Am. Compl. ¶¶ 27, 28).

On January 13, 2003, Plaintiff had an appointment at the hospital, where the hospital "learned that the Plaintiff had not been receiving the medication they had prescribed" and ordered prescriptions from the hospital pharmacy, which CMS did not pick up (Am. Compl. ¶¶ 29, 30). Plaintiff learned from Defendant Garner-Williams that the hospital pharmacy called the prison health services to tell them they would not fill the prescriptions (Am. Comp. ¶ 30). From January until April, Plaintiff kited Health Services seven times concerning his medications (Am. Compl. ¶¶ 31, 34, 38-40, 44-46). From June 29 until July 10, 2003, Plaintiff was hospitalized; during this hospitalization he had surgery to remove part of his stomach (Am. Compl. ¶¶ 50-51). Plaintiff continued kiting Health Services and seeing Dr. Shavell (Am. Compl. ¶¶ 52-54). He was hospitalized again from September 10 through September 13 (Am. Compl. ¶¶ 55-56).

On September 18, 2003, Plaintiff blacked-out in his cell and Defendant Garner-Williams was called (Am. Comp. ¶ 61). Nurse Garner-Williams refused to treat Plaintiff and went as far as to strike him in the neck to show that he was "faking" his unconsciousness. Allegedly, after 90 minutes when Nurse Garner-Williams was finally pressured by her staff to treat Plaintiff, she had him carried to health service, awoke him using ammonia, and placed him in segregation in an observation cell, where he remained for four days (Am Compl. ¶¶ 60-62). Plaintiff asserts that he was placed in the observation cell as a cover-up for Defendant Garner-William's refusal to treat him. After receiving a psychiatric evaluation he was placed back into the general prison population.

Throughout 2003 and 2004, Plaintiff continued to be seen by doctors at Health Services; he repeatedly kited Health Services and filed several grievances (Am. Compl. ¶¶ 71-

89).  Plaintiff accuses Defendant Garner-Williams of deliberate indifference, intentional denial of medical treatment, medical malpractice, and inhumane treatment based on the above incidents.

>A.      Grievances filed against Nurse Garner-Williams and attached to complaint

On September 26, 2003, Plaintiff filed a Step I grievance (03-09-00967-12C1) against Nurse Garner for an incident of September 18, 2003.  Plaintiff claimed that he blacked out in his cell and that Nurse Garner told him to "stop faking", hit him on the neck, and refused to bring him to health services.  The grievance claims that he was unconscious for another 45 minutes before Nurse Garner had him brought to health services on a stretcher and placed him in segregation observation as punishment for his illness.  Plaintiff claims Nurse Garner refused to treat him and wrongfully placed him in segregation.  The grievance response states that the incident was under investigation and would be answered at a later time.  On October 24, 2003, Plaintiff filed a Step II appeal. On January 13, 2004, MDOC responded to this appeal, stating that some of the issues in the Step II appeal were regarding a October 17, 2003, incident with Nurse Jackson, and those would not be addressed.  Regarding the allegations against Nurse Garner, the Department found that his contact with nursing on September 18 was appropriate, his medical care before and since September 18 had been appropriate, and his placement in segregation was appropriate.  His Step III appeal was denied because it was found his issues were adequately addressed at Step II.

II.     ANALYSIS

>A.      Standard of Review

Defendant Garner-Williams has filed a motion for summary judgment under Rule

56(b).  Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has "the burden of showing the absence of a genuine issue as to any material fact."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985).  In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).  But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

B.    Eighth Amendment Deliberate Indifference

1.    *Legal Standard*

5

The Supreme Court has recognized the responsibility of the courts "to scrutinize claims of cruel and unusual confinement." *Rhodes v. Chapman*, 452 U.S. 337, 352 (1981). Included as a type of conduct that violates the Eighth Amendment is a prison official's deliberate indifference to a prisoner's serious medical needs. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). To succeed on a claim of deliberate indifference, plaintiff must satisfy two elements, an objective one and a subjective one. He must show he had a serious medical need, and he must show that defendant, being aware of that need, acted with deliberate indifference to it. *Wilson v. Seiter*, 501 U.S. 298, 300 (1991).

A medical need is "serious" if it has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). A serious ailment requires immediate attention or is potentially life-threatening:

> A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."

*McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation omitted). To establish a serious medical need, it is not necessary for plaintiff to show that he suffered an actual, tangible physical injury from the defendants' alleged actions. *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991). The fact that a plaintiff endured unnecessary pain and suffering is sufficient for an Eighth Amendment claim. *Id.* In *Westlake v. Lucas*, the Sixth Circuit stated that "a prisoner who is needlessly allowed to suffer pain when relief is readily

6

available does have a cause of action against those whose deliberate indifference is the cause

of his suffering." *Westlake*, 537 F.2d at 859.

　　"Deliberate indifference" has been variously defined by the federal courts that have

considered prisoners' Eighth Amendment claims, but all agree that it is more than mere

negligence and less than actual intent.  In *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970

(1994), the Supreme Court explained the meaning of "deliberate indifference."

> [A] prison official cannot be found liable under the Eighth Amendment for
> denying an inmate humane conditions of confinement unless the official
> knows of and disregards an excessive risk to inmate health or safety; *the
> official must both be aware of facts from which the inference could be drawn that
> a substantial risk of serious harm exists, and he must also draw the inference*. . . .
> Eighth Amendment suits against prison officials must satisfy a "subjective"
> requirement . . . .

511 U.S. at 836-37, 114 S. Ct. at 1978-1979 (emphasis supplied).  *See also Estelle v. Gamble*,

429 U.S. at 105-106 (a complaint that a physician has been negligent in diagnosing or

treating a medical condition does not state a valid claim under the Eighth Amendment;

"medical malpractice does not become a constitutional violation merely because the victim

is a prisoner"); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (deliberate indifference

is the equivalent of "criminal recklessness, which requires a subjective showing that the

defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir.

1992) ("[o]bduracy or wantonness, not inadvertence or good faith error, characterizes

deliberate indifference").  Accordingly, even "gross negligence" by prison officials is

insufficient to support a deliberate indifference claim.  *Ribble v. Lucky*, 817 F. Supp. 653,

655 (E.D. Mich. 1993).

　　As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts

7

or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Delay in access to medical attention can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (per curiam), *cert. denied*, 496 U.S. 928, 110 S. Ct. 2624 (1990)).

### 2.   *Claims against Defendant Garner-Williams*

Plaintiff claims that Defendant Garner-Williams violated his constitutional rights by accusing him of "faking" unconsciousness, thereby delaying his treatment for one hour, and by placing him in an observation cell to "cover-up" her refusal to treat Plaintiff. Defendant Garner-Williams has submitted an affidavit indicating that she was called to Plaintiff's cell on September 18, 2003. Upon arrival, she found him "spread-eagle" on the floor. His vital signs were normal and no urgent problems were noted. When she tried to open Plaintiff's eyes, he squinted and tightened them. Since Plaintiff refused to move, Defendant Garner-Williams instructed guards to transport him to the health care facilities. Upon arrival to health care, Plaintiff was awake and alert and ate a full meal. Defendant Garner-Williams noted flat affect, agitation, and other signs of depression. After reporting her findings to a doctor, she was instructed to place inmate in observation to be seen by a psychologist. Medical records attached to Defendant's motion are consistent with her affidavit.

Here there are two questions concerning Plaintiff's Eighth Amendment claims. First, there is a substantial question of fact as to whether Plaintiff had a serious medical need. There is evidence to support Defendant Garner-Williams' earlier indication that she

8

suspected Plaintiff was "faking it" on September 18, as Plaintiff asserted. Yet, not

withstanding the equivocal evidence as to whether Plaintiff was experiencing a serious

medical need that day, there is not sufficient evidence that Defendant Garner-Williams

actually drew the inference that Plaintiff was experiencing a substantial risk of serious harm.

Plaintiff claims unnamed corrections officers and inmates told him what occurred

while he was allegedly unconscious. He again asserts in response to this motion that he

"laid unconscious in his cell for over an hour and a half". (Am. Compl. ¶ 61). He asserts

Defendant Garner-Williams had knowledge of his medical condition and must have known

of the serious risk on September 18. Yet, the medical records show that around 2:40 p.m.,

when asked to open his eyes in the cell, Plaintiff squinted and tightened them suggesting a

conscious response. While to move his arms and legs, he was able to sit up. He was taken

to Health Care where he was alert and expressed a phobia about taking medications due to

vomiting. Defendant gave him Maalox then a meal with no nausea. She noted his depressed

affect and possible malingering. A 5:30 p.m. entry shows he ate an evening meal without

nausea or vomiting. Records also show he ate his entire evening meal.

Plaintiff has not provided any evidence that his being taken to Health Care and then

being placed in observation was a serious threat to his health. In light of this unrefuted

medical record evidence, there is not sufficient evidence for a jury to conclude that on the

early afternoon of September 18, 2003, Defendant Garner-Williams recognized a serious

medical need or responded inappropriately to the medical condition she encountered. She

doubted his being unconscious and there is no evidence that any delays in having Plaintiff

taken to Health Care resulted in any harm. Based upon the evidence provided, read in the

light most favorable to Plaintiff, no reasonable fact finder could conclude that on September 18, 2003, Defendant Garner-Williams was deliberately indifferent to Plaintiff's health.  There is no indication that she took action or failed to take action for which a jury could find her deliberately indifferent.

III.    RECOMMENDATION

    For the reasons stated above, IT IS RECOMMENDED that Defendant's motion for summary judgment be GRANTED.

    Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of  service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS,*  931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

    ***Note:*** any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as

10

"Response to Objection #1," "Response to Objection #2," etc.

SO ORDERED.

Dated: March 28, 2005
Ann Arbor, Michigan

                                                    s/Steven D. Pepe
                                                    United States Magistrate Judge

Certificate of Service

        I hereby certify that on March 28, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Ronald Chapman, and I further certify that I mailed a copy to the following non-ECF participant(s): Eddie Spiller and Julia Bell.

                                                    s/William J. Barkholz
                                                    Courtroom Deputy Clerk

11